LOUIS R. SEREINSKY, DOING BUSINESS AS AMERICAN CELLULOSE CO.
v. UNITED STATES

**No. 6555.**—Pro forma invoices dated Ottawa, Canada, March 11, 1943, etc.
Entered at Indianapolis, Ind., April 5, 1943, etc.
Entry No. 110, etc.

(Decided November 26, 1946)

*George S. Dailey* for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney), for the defendant.

OLIVER, Presiding Judge: These four appeals for reappraisement involve scrap film imported in steel drums from Canada and entered at the port of Indianapolis, Ind. No question is involved as to the drums.

Entry of the scrap film was made at the *pro forma* invoice values in United States currency for each lot as follows:

| Entry 110 | 1,460 lbs | $47.46 |
| Entry 124 | 1,700 lbs | $45.00 |
| Entry 125 | 2,075 lbs | $45.00 |
| Entry 138 | 2,000 lbs | $45.00 |

The appraiser advanced the value to 10 cents per pound Canadian currency on each of the four entries on the basis of foreign value.

At the hearing, counsel for plaintiff stated that the merchandise in question was purchased under an agreement whereby plaintiff would

pay seller, Canadian Motion Picture Bureau, 7½ cents per pound for large rolls of clear nitrate film, 5 cents per pound for mixed, including rolled short ends, and 1 cent per pound for miscellaneous mixed film. At the time of shipment only the seller had knowledge of the amount of scrap falling into each of these classifications. Plaintiff had no means of determining the number of pounds of each classification of scrap prior to receiving and separating the merchandise. Plaintiff therefore relied for value on the seller's *pro forma* invoices.

Witness Sachs who is employed by the Consolidated Refining Corp. testified for the plaintiff that the only use for this scrap film is to burn it and reclaim the ashes and refine them to get the silver (R. 8). He stated that in the market of this country he paid 1½ cents per pound for scrap film in 1942 and 1943 (R. 15).

Witness Sereinsky, the importer herein, testified that the merchandise was purchased from the Canadian Government; that for nitrate film the stipulated prices were 5 cents for large rolls and 3 cents for smaller rolls (R. 20); that certain shipments when sorted and segregated were found not up to standard as they contained cellulose acetate film which contaminated the material (R. 21). His company informed the exporter of this and the exporter agreed to be more careful in shipping the material. The material in question was shipped on *pro forma* invoices and averaged about 2 to 3 cents a pound. His company also imported some film from film exchanges for which he paid 7½ to 9 cents a pound "because they were all nitrocellulose films in large rolls" (R. 22). Offerings were made by the Canadian Government of scrap film and sold to the highest bidder (R. 27). The shipment in question was purchased in this way at the prices appearing on the invoices (R. 28). He stated also that the Canadian Government did not offer any whole-roll film but that his source of supply for whole-roll nitrate film was the film exchanges, the renters (R. 28), and that the imported material consisted of laboratory film or a conglomeration of short ends and colored film, and it even had acetate (R. 23). He testified that to his knowledge there were no purchasers of this laboratory scrap film in Canada.

The appraiser at Indianapolis appeared as a witness for the defendant and testified that upon examination of all the drums involved in these shipments he found that 75 per centum was whole-roll film (R. 45, 71).

Counsel for the defendant introduced certified copies of a report of the acting treasury attaché at Montreal in reference to an investigation as to the value of scrap film (exhibit C). According to this report, the manager of the exporter stated "all sales have been made at a uniform price of five cents per pound." It appears, however, that he was under the impression that all film was shipped in large reels of approximately 800 feet in length. He further stated that the invoices showed only a nominal value estimated at $3 for the con-

tainer and $7 for the film, and that the importer's payment figures were accepted by the Canadian Government.

The statement of counsel for the plaintiff as to contract prices of 7½ cents for large rolls, 5 cents for mixed, and 1 cent for miscellaneous mixed, is not supported by any evidence.

The importer's testimony that the stipulated prices were 5 cents for large rolls and 3 cents for smaller rolls is in conflict with the fact that the material was shipped on *pro forma* invoices at an average price of about 2 or 3 cents a pound. Conflict also exists between said *pro forma* invoice prices and the importer's statement that this merchandise was secured by open bidding and that he made the highest bid. If the merchandise was secured in this way, it should have been so invoiced.

As to the defendant's contention that the shipments contained 75 percentum whole-roll film, the record in this case indicates that the weight of a drum of whole-roll film would weigh over 500 pounds. Each of the entries here involved covered six drums of scrap film. By mathematical calculation it will be seen that the weights of the shipments in question averaged from 245 to 359 pounds per drum, which is an indication consistent with plaintiff's claim that the merchandise involved is scrap film.

It appears also that plaintiff relied on the exporter's *pro forma* invoices and had no means of determining the number of pounds of each kind of scrap film prior to receiving and separating the merchandise and that the actual price paid is not determined until after the shipment is received and segregated. The record shows that 18 out of the 24 drums imported were delivered from customs custody on June 21, 1943. The importer gave his testimony on October 17, 1945. During that interval, he could have weighed the 18 drums released to him and thus have determined his liability, even if actual payment had not yet been made. As to the six drums still within customs custody, in the event that any of the mentioned contract prices were applicable, the importer's liability would be mere conjecture until the goods were sorted and each type weighed, which has not been done.

On this record, I find:

1. That the merchandise in question consists of scrap film.

2. That there was no foreign value for such or similar merchandise in Canada at the time of exportation, and the evidence fails to establish an export value for such or similar merchandise.

I therefore have no alternative but to find the values of the merchandise in this case to be the values found by the appraiser. *United States v. Joseph Fischer as Liquidating Agent of Schmoll Fils Assd., Inc., et al.,* 32 C. C. P. A. 62, C. A. D. 286.

Judgment will be rendered accordingly.